[L. A. No. 22992.   In Bank.   June 11, 1954.]

THE PEOPLE, Appellant, v. RALPH W. THOMPSON et al., Defendants; ALBERT E. METCALF et al., Respondents.

Robert E. Reed, George C. Hadley, Herbert J. Williams, Albert J. Day, R. B. Pegram and John N. McLaurin for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), John B. Anson, Deputy County Counsel, Landels & Weigel, Edward D. Landels, Stanley A. Weigel and Emil M. Ripley as Amici Curiae on behalf of Appellant.

Holbrook, Tarr & O'Neill and Leslie R. Tarr for Respondents.

SCHAUER, J.—This is an eminent domain proceeding to condemn for freeway purposes approximately 17 (possibly 23) acres[1] of land (designated in the complaint and herein as Parcel 2A) out of a 100-acre tract owned by defendants. The trial court ruled that by the taking of Parcel 2A defendants became entitled not only to the value of that parcel but also to severance damages, if any, to their remaining property. A jury found that the value of Parcel 2A was $12,000; that the damages to defendants' remaining property amounted to $17,500; and that there were no benefits to defendants' remaining property. The state appeals from the ensuing judgment for defendants. The principal contention of the plaintiff is that the land of defendants from which Parcel 2A was taken, insofar as concerns the portion of it situated west of existing Highway 101, should not be considered as one larger parcel for the purpose of allowing severance damages.[2] We have concluded that the judgment should be affirmed.

---

[1]There is some uncertainty in the pleadings, exhibits and briefs as to the number of acres being condemned but the exact area is immaterial to the disposition of the appeal. The state alleges in its complaint that Parcel 2A contains ''12.73 acres in addition to 4.27 acres now used and acknowledged as public road [being the fee title to the land of defendants upon which the right of way for existing Highway 101 is imposed].'' There is also a contention, discussed in detail in the opinion, that the state (plaintiff) already owns fee title to the land underlying existing Highway 101 which land, nevertheless, is included in the parcel now sought to be condemned.

The complaint further alleges that ''As much of the herein described property as lies within the boundaries of streets or highways, is subject to an easement or prescriptive right of the public for use for such purpose'' and that ''Parcels 1, 2-A . . . include only parts of entire parcels of property.''

[2]The exact contention of plaintiff is stated as follows: ''For the purpose of converting Highway 101 into a freeway, the State Highway Department, appellant herein, filed this proceeding to acquire a part of respondents' property which has been described and referred to as Parcel 2-A. By the proposed taking 12.73 acres were carved out of respondents' property on the landward side of existing State Highway 101, and all abutter's rights of access appurtenant to the remainder of this landward property were extinguished except that the northerly 361.33 feet thereof

The land owned by defendants is crossed by existing Highway 101, which runs north-south. Their land west of Highway 101 is beach property. A "highway easement" for drainage of a creek under Highway 101 crosses the beach property from the highway to the Pacific Ocean; the portion of the beach property north of the drainage easement consists of .99 acres and the portion lying south of such easement consists of 7.24 acres. Of defendants' land east of the existing highway, the northerly half thereof, consisting of approximately 35 acres, is used for farming; the southerly 35 acres are swamp land. Highway 101 is an ordinary three-lane highway over which at any point defendants can pass back and forth between their beach property and their landward property. As noted above, there is a controversy (hereinafter discussed) as to whether the State of California by a 1924 deed acquired the fee title to the land under Highway 101, or whether it acquired only a right of way with fee title remaining in defendants. The complaint seeks and the judgment orders condemnation in fee of Parcel 2A, which consists of both a strip of land (comprising 12.73 acres) east of existing Highway 101 and of the underlying fee to the land now used for that highway and for drainage purposes.

Construction of the freeway[3] will make the following changes in the existing situation: A second strip of road for northbound traffic only will be constructed east of the existing Highway 101 roadway. This old roadway will be used for southbound traffic only. A fence will be built along the entire easterly line of Parcel 2A except for the northerly 361.33 feet thereof; along the 361.33 feet there will be a service road connecting "at approximately the northerly line of defendants' property" by an underpass with each of the roadways which will constitute the freeway. At "approximately the southerly line of defendants' property" the separate roadways which will constitute the freeway will be joined. Except

was to abut upon and have access to a newly created frontage road. In addition this parcel included, within its description, the underlying fee to all existing State highway easements. All of the property sought to be taken, except the underlying fee to the beach easement, consisted of landward property. *No abutter's rights of access were taken from beach property.*" It is the last sentence which poses the principal argument.

[3] Streets and Highways Code, section 23.5: " 'Freeway' means a highway in respect to which the owners of abutting lands have no right or easement of access to or from their abutting lands or in respect to which such owners have only limited or restricted right or easement of access."

at these widely separated points the freeway, as it relates to defendants' property, cannot be crossed.

The trial court held that for the purpose of determining the value of Parcel 2A and severance damages all defendants' property on both sides of Highway 101 was "one contiguous and entire tract . . ., subject to the easement for highway purposes"; that the taking of Parcel 2A and construction of the proposed improvement will sever defendants' remaining property into three separate, noncontiguous parcels and "will substantially impair defendants' rights of access." From the factual standpoint this holding obviously is correct. We are satisfied, for reasons hereinafter elaborated, that prior to this proceeding the state did not possess fee title to the land underlying Highway 101. The only question as to this aspect of the matter, therefore, is a legal one. Does the existence of the present roadway, with the right of way therefor, preclude the allowance of severance damages in respect to the remainder of the tract? We think not.

In an eminent domain proceeding the condemnor must pay the owners of the property taken not only the value of the property taken but also "If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." (Code Civ. Proc., § 1248, par. 2.)    Under section 1248 "contiguity is ordinarily essential, and the owner is not entitled to severance damages for injury to other separate and independent parcels. [Citations.]" (*People* v. *Ocean Shore Railroad, Inc.* (1948), 32 Cal.2d 406, 423 [196 P.2d 570, 6 A.L.R.2d 1179].)

As previously indicated, the People urge that the beach property and the landward property are not one parcel because they are "separated" by existing Highway 101. It becomes necessary, then, to determine whether the existence of this roadway is as a matter of law a separation. Obviously, since it permits unlimited access back and forth across the roadway, from any part of defendants' tract to any other part thereof, it is not factually a true or complete separation.

The state acquired its rights to Highway 101 by a 1924 deed from defendants' predecessors in interest which, according to an argument by the People (although, as hereinabove shown, not in accordance with the allegations and prayer of the complaint), physically divided the property by conveying to the

state a fee simple title to the strip of land which is used for Highway 101. The document of conveyance is entitled "Grant Deed." It provides that the grantors, in consideration of $10, "hereby *grant* to The State of California *the real property* . . . described as follows: . . . It is hereby agreed that as a further consideration for the *granting of said right of way*, the State . . . [will abandon] the *old highway right of way* which is . . . not included within the 80′ strip of land described herein"; grantors "hereby waive all claim for damage or compensation for and on account of the establishment of *said State highway*." (Italics added.)

At the time of the execution of the 1924 deed section 2631 of the Political Code[4] provided, "By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided."

It is clear that, as ruled by the trial court, the deed, read as a whole and in the light of former section 2631 and the decisions construing and applying that section, was intended to and did convey only an easement. Numerous cases have recognized that while that section was in effect the public by acquiring land for a highway acquired only the rights described in such section. (See *Wright* v. *Austin* (1904), 143 Cal. 236, 238-240 [76 P. 1023, 101 Am.St.Rep. 97, 65 L.R.A. 949]; *Gurnsey* v. *Northern Cal. Power Co.* (1911), 160 Cal. 699, 705 [117 P. 906, 36 L.R.A.N.S. 185]; *Olaine* v. *McGraw* (1913), 164 Cal. 424, 428 [129 P. 460]; *Porter* v. *City of Los Angeles* (1920), 182 Cal. 515, 519 [189 P. 105]; *City of Oakland* v. *Schenck* (1925), 197 Cal. 456, 461 [241 P. 545]; *City of Burlingame* v. *Norberg* (1930), 210 Cal. 105, 108 [290 P. 587]; *People* v. *Olsen* (1930), 109 Cal.App. 523, 532 [293 P. 645]; *People* v. *Church* (1943), 57 Cal.App.2d Supp. 1032, 1055 [136 P.2d 139].)

The People rely upon the statement in *Moakley* v. *Los Angeles Pac. Ry. Co.* (1934), 139 Cal.App. 421, 424 [34 P.2d 218], that "The term 'right of way' is frequently used to describe not only the easement but as well the strip of land itself occupied by such use." But the court in the Moakley case concluded that the deed there considered conveyed only an easement, not the fee.

---

[4]In 1935 section 2631 was amended to limit its application to county highways, and was reenacted as section 905 of the Streets and Highways Code.

The People also cite *Palmer* v. *Los Angeles etc. Ry. Co.* (1921), 55 Cal.App. 519, 521 [203 P. 1012], and *Midstate Oil Co.* v. *Ocean Shore R. R. Co.* (1928), 93 Cal.App. 704, 708 [270 P. 216]. Those cases concern grant deeds to railroads which in their descriptions of the land include the term "right of way." In each case it was held that the use of the term did not limit the interest conveyed to a mere easement. The cases are not controlling here, for there was no limitation similar to former section 2631 as to the interest which the railroads could accept; they could acquire a fee by purchase, although if they did resort to eminent domain they could have acquired only an easement. (*City of Oakland* v. *Schenck* (1925), *supra*, 197 Cal. 456, 466.)

The People also rely upon *Las Posas Water Co.* v. *County of Ventura* (1929), 97 Cal.App. 296 [275 P. 817]. That case, however, as appears from the numerous authorities hereinabove cited, is out of line with both earlier and later decisions of this court. The deed there considered provided that the grantors "remise, release and forever quitclaim, unto the said party of the second part, and its successors, all that certain strip or parcel of land . . . Together with all and singular the tenements, hereditaments and appurtenances, thereunto belonging, or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof and also all the estate, right, title, interest, property, possession, claim and demand whatsoever as well in law as in equity of the said parties of the first part of, in or to the said premises and every part and parcel thereof, with the appurtenances" (p. 298). It was held that this was a conveyance, or perhaps a quitclaim, of the fee and that the provision of the habendum clause that the land was to be held "as a public highway" did not limit the granted or quitclaimed fee title. Concerning former section 2631 of the Political Code, quoted *supra*, the court said (p. 300), "It has been said that this section is only the formulation of the general rule laid down in the books and decided cases when treating of highways as easements. [Citation.] It is not new law, but simply means that by taking or accepting an easement over land for a highway the public (the people of the state) acquire only the right of way, etc. It should be borne in mind that this section has no reference to the fee title to the land which is servient to the easement. The fee title may belong to the owner of the adjacent property or it may belong to one who owns only the property which is subject

to the easement itself. It may be owned by a private individual or corporation or by the county or by the state."

To apply the quoted language of the Las Posas case to the present situation would require us to refuse to give effect to the plain provision of former section 2631 of the Political Code that "By taking or accepting land for a highway, the public acquire *only the right of way,* and the incidents necessary to enjoying and maintaining the same. . . ." (Italics added.) Obviously, if that section is applicable at all it is applicable here; it was, indeed, an idle enactment if it meant merely that the public acquired only a right of way for a highway when the deed expressly conveyed only a right of way for a highway. Moreover, as declared by this court in *Parks* v. *Gates* (1921), 186 Cal. 151, 154 [199 P. 40], not mentioned in the Las Posas decision, "There is no dispute under the authorities that a direct grant of a 'right of way' for a road carries with it only an easement in the land. Rights of way are classified as easements by section 801 of the Civil Code and section 2631 of the Political Code. Nothing passes by a grant of a right of way 'but that which is necessary for its reasonable and proper enjoyment.' [Citations.] . . . Under the rules of construction the whole instrument must be read together to determine the effect of a deed, and the *habendum* may be resorted to as a limitation upon the estate granted." In that case the deed provided that the grantor "Does grant, bargain and convey: [description of land] . . . This grant is for the _____ of granting . . . a right of way." The trial court's decision that the deed conveyed only an easement for right of way for road purposes was upheld on appeal. In the present case we hold that the court likewise correctly determined that the deed in question conveyed only an easement, and that any contrary implications in the Las Posas case (which, incidentally, was decided prior to the enactment, in 1933, of section 363u of the Political Code (now Sts. & Hy. Code, § 104)) must be disapproved.

The People, relying upon *County of San Mateo* v. *Christen* (1937), 22 Cal.App.2d 375, 380 [71 P.2d 88], contend further that even if the 1924 deed conveyed only an easement, such easement destroyed the physical contiguity of defendants' land and also, as an incident of such destruction, their right to severance damages for the taking and separation here accomplished insofar as relates to the beach property. In the Christen case the defendant in 1910 and 1913, by separate

purchases, had acquired lots on opposite sides of a public street which street had been delineated on a subdivision map filed for record in 1872, but which had never been improved and was not open to travel. Defendant used the entire tract as a unit. Whether his use of the street land was as a trespasser or otherwise does not appear, nor is it shown in whom the fee title to such street land was vested. The county condemned land on one side of the delineated street for a highway. On appeal the court appears to have been of the view that under the circumstances there shown the lands on opposite sides of the street were not physically contiguous, even though the street had never been opened or improved, for it held that the case was not controlled by *City of Stockton* v. *Marengo* (1934), 137 Cal.App. 760, 766 [31 P.2d 467] [citing 2 Lewis on Eminent Domain, 2d ed., § 475, p. 1032 and 20 C.J., § 190, p. 735, and quoting and following the proposition that ''The mere platting of a tract of land on a map into lots and blocks does not constitute such a division of it into separate lots that the owner's damage must be limited to the particular lot a portion of which, as shown on the map, is actually taken''], but was controlled by *Oakland* v. *Pacific Coast Lbr. etc. Co.* (1915), 171 Cal. 392, 398 [153 P. 705] [no severance damages allowed for physically noncontiguous property devoted to a unified use with the property condemned], and *East Bay Mun. Utility Dist.* v. *Kieffer* (1929), 99 Cal.App. 240, 247-248 [278 P. 476, 279 P. 178] [no severance damages allowed for land separated from the land condemned by a tract which defendant had only an option to purchase], and that proof of damages had properly been limited to the land on the same side of the street as that condemned. However, since in the Christen case the lots had been separately platted and had been acquired at different times, and the court neither discussed nor apparently considered either the provisions of section 2631 of the Political Code or the matter of fee title to the land underlying the unopened street, the holding is not persuasive in the present controversy.

No California case has been found which concerns severance damages where physically contiguous land is crossed by an easement for a street or highway which is in actual use but which permits unlimited access at all points. In other jurisdictions it has been held, ''If the owner's land is merely crossed by the easement of another, the fee remaining in him, and the sections so made are not actively devoted, as so divided, to

wholly different uses, they are to be considered actually contiguous and so as a single parcel or tract.

"In a number of cases this view has been applied where the division was by a street or highway in which the owner held the land on both sides of it and owned the fee in the street or highway." (Annotation, 6 A.L.R.2d 1197, 1201.)

■ So also, in 18 American Jurisprudence 910-911, section 270, the general rule is stated: "In determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test and . . . it is not considered a separate and independent parcel merely because it was . . . separated by an imaginary line, or even if the two tracts are separated by a highway. . . . But it has been held that, in awarding damages for condemnation of a right of way across that portion of a farm which lies on one side of a highway, on which are the farm buildings, the damages to property not taken are properly limited to the remainder of such portion, to the exclusion of the land on the other side of the highway, where there is no evidence that such land will be damaged or decreased in value."

Since in this case the plaintiff is taking not only the strip of land adjacent to the existing Highway 101 but also the fee title to the land on which the right of way for such existing highway is imposed it becomes necessary to consider the rules applicable to that situation. In 29 Corpus Juris Secundum at the pages and in the sections respectively indicated we find these pertinent statements: (p. 1008, § 152) "Where a . . . highway is laid out through a tract of land, the owner is entitled to compensation not only for the value of the land actually taken, but also for the damage, if any, accruing to the remainder, as measured by the difference in the value of the entire tract before and after the taking. Each case must be governed by its own circumstances." And (p. 986, § 143) "In the taking of property encumbered by easements the owner is entitled only to the value of the property in its then existing condition and not the value as though the property were held as an unencumbered whole."

Arising from not the same facts but from relationships similar enough to suggest that the same principle might well govern, is *Los Angeles* v. *Allen* (1917), 32 Cal.App. 553, 561 [163 P. 697], wherein the late Justice Conrey (then Presiding Justice of the District Court of Appeal) said: "There is an important difference between the extension of a street crossing over a railroad track and a taking for the purpose of con-

structing a street longitudinally covering a right of way. 'The right to take longitudinally is very different from the mere right to cross, for in the one case the rights of the railway company are materially impaired, while in the other the taking is such that both uses can stand together'. . . . The corporation having the original right is not, when the land is occupied concurrently by another corporation, entitled to recover the value of the land as measured by the most advantageous use to which it could be put. The true measure of damages in each case is the decrease in the value of the use of the land for the first purpose by reason of its being concurrently used for the second purpose.'' To the same effect see *People* v. *Tulare Packing Co.* (1938), 25 Cal.App.2d 717, 728 [78 P.2d 763].

Here the trial court fully and carefully instructed the jury that: ''The defendants have no right as against the State . . . to perpetuate the highway along . . . their property as such highway now exists. The defendants are not entitled to any damages by reason of the fact that the traffic on Coast Highway . . . 101 will, after construction of the proposed new improvement, proceed in separated roadways along and in front of their property . . . [and] defendants are not entitled to any damages resulting from a diversion from or loss of traffic to their property arising from the separation of the highway into separated lanes. . . .

''The defendants as owners of.real property abutting upon a State highway have as an easement or appurtenance to their property the right of access to and from the highway upon which their property fronts or abuts. . . . In order for the defendants to be entitled to damages . . . for the taking or impairment of such right of access you must find that their property has actually decreased in value by reason of a substantial impairment or a taking of the private, as distinguished from the public, right of access.

''The underlying fee, described in parcel 2-A, is burdened with an easement for highway purposes. The defendants, as owners of the underlying fee, have the right to use the land over which the easement runs, provided the use is not inconsistent with the use of the easement.

''It is within the powers of the . . . State . . . to keep the highways free from encroachments, and to determine what constitutes an encroachment. . . .

''It is for you to determine from all the evidence . . . and in accordance with the instructions . . . the value, if any,

to be given to the underlying fee burdened with the easement for highway purposes. . . .

"After you have determined the market value of the property designated as parcel 2-A, and owned by the defendants, sought to be taken by this proceeding, you must then ascertain and assess the amount of damages, if any, to the remaining property. This damage, if any, will be determined by ascertaining the market value of the property not taken as it was on . . . the date of issuance of summons herein, and by deducting therefrom the market value of the said remaining property after the severance of the part taken and the construction of the highway in the manner proposed by the plaintiff. . . .

"If you find that market value of the remaining property is not diminished or decreased by the taking of a portion of the property and the construction of the improvement in the manner proposed, then the defendants are not entitled to recover anything in this action except the market value of the land sought to be taken. . . ."

We are satisfied that the instructions quoted stated the proper rule to be applied where, as here, the facts show that there is actually one parcel crossed by an easement. ▆ Obviously both the beach area and the landward area are affected in some measure by the taking of the land, including the fee to the land on which the Highway 101 easement was already imposed, and the building of a fenced freeway which, except for use of a roundabout service road at the north and of the roadway joinder at the south, will completely stop the free passage by defendant from one portion of his land to another. This taking and construction affects directly defendants' access to and from their beach property as well as the landward property; such taking and improvement effect a separation of the property and a curtailment of ingress and egress which did not theretofore exist. It became a question of fact then, which the court properly left to the jury, whether severance damage occurred and, if so, in what amount.

If the only easement over defendants' land had been an occasionally used pedestrian trail there would be few if any who would assert that the right of way or easement for the trail constituted such a division of the land as to render its several parts noncontiguous. The change in degree of the burden of the easement from a seldom used trail to a paved and heavily traveled state highway is great, even though the highway still admits of completely free access at all points

from one area of defendants' land to the other; but the degree of furtherance of separation of the land is much greater when the change is from a mere unfenced roadway to a fenced freeway which completely precludes access from one part of defendants' land to the other except by the use of a service road and of the roadway joinder, than is caused by a change from a trail to an unfenced roadway.

The People contend, however, that it is the California rule that the land not only must be physically contiguous but also it must be used for one general purpose to constitute a single parcel for the purpose of severance damages. In this connection the trial court found, upon adequate evidence, "that said property is undeveloped and only a part has been used for agricultural purposes; that no unity of use existed between said abutting lands, nor has said land been divided by separate uses." More specifically, part of the landward property was used for farming, the swamp was used only for the display of signboards, and the beach property up to the time of taking had not been put to any independent or specific use.

It has been held that even though a lot owned by defendants is actually contiguous to another tract owned by them, from which a strip is condemned, nevertheless where there is actual diversity of use the lot cannot be considered as part of the tract for the purpose of severance damages. (*City of Stockton* v. *Marengo* (1934), *supra*, 137 Cal.App. 760, 767.) However, in the Marengo case the main tract was used by defendants for the purpose of farming, while the lot which was held not to be a part of the tract for severance damage purposes was separated from the larger tract by a fence and was occupied by and used as a gas station, which was leased to strangers to the eminent domain proceedings. By contrast, there is in the present case no actual diversity or division of use, but simply a failure to use some of the property. Furthermore, here, all of the parts of defendants' land were directly contiguous to some taking: (1) The landward area was contiguous to the strip taken for the northbound traffic roadways, the parkway and service road, and (2) the beach area was contiguous to the fee underlying Highway 101 which was taken as a part of the entire project to the end of making a freeway with no ingress or egress and crossing rights where previously only a crossable highway on a right of way had existed. Under the circumstances of this case there appears to have been no error in the view that the property could and should be considered as one parcel.

■ Defendants' expert witnesses were allowed to testify, over objection, that in arriving at their opinions as to severance damages, they considered that the free passage across the highway between the beach property and the landward property was cut off, thus lessening the value of the property for development as a unit for residential and business purposes, and their testimonies indicated the greater value of the properties had they not been separated by the freeway and fence. This testimony was relevant (when the property is regarded as a unit) to the issue of market value (see *People* v. *La Macchia* (1953), 41 Cal.2d 738, 751 [264 P.2d 15]), and it is the diminution in market value of the property not condemned which is the measure of severance damages. (*People* v. *Ricciardi* (1943), 23 Cal.2d 390, 401 [144 P.2d 799].)

The People object to the instruction, given in connection with the instructions as to opinion testimony of experts, that "You are not bound . . . by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it if in your judgment the reasons given for it are unsound." They rely upon *Housing Authority* v. *Forbes* (1942), 51 Cal.App.2d 1, 10 [124 P.2d 194], and the opinion of this court denying a hearing in *Los Angeles City H. S. Dist.* v. *Schumann* (1926), 78 Cal.App. 353, 362 [248 P. 737]. In each of those cases approval was withheld from an instruction that the jury in its discretion could reject the testimony of an expert as to value if it appeared that the opinion was not based upon such a thorough knowledge of all facts relating to the property as would enable the witness "to express a true opinion as to its market value"; in each of those cases, however, the appellate court held that the giving of the instruction was not ground for reversal.

It is unnecessary to discuss whether the instructions given in the Forbes and Schumann cases were properly disapproved. ■ It is sufficient to point out that the instruction complained of in the present case did not, as the People suggest, permit the jury arbitrarily to disregard testimony as to value, or lead them to believe that expert testimony was of less weight than other testimony. There were four expert witnesses who gave their opinions as to the value of Parcel 2A, as to severance damages, and as to benefits to the remaining property resulting from the improvements. Pursuant to the findings of the jury the amounts awarded defendants were greater than those to which the People's two witnesses testified and

less than those to which the defendants' two witnesses testified. This award has ample support; manifestly the jury were not bound to accept the testimony of any one of the four witnesses. The situation is not like that in *People ex rel. Dept. of Pub. Works* v. *McCullough* (1950), 100 Cal.App.2d 101, 105 [223 P.2d 37], relied upon by the People, where the jury rejected the evidence of all the experts, both those who testified for plaintiff and those who testified for defendant, and awarded an amount higher than the valuation to which any witness had testified.

The People object to a portion of the instruction concerning the allowance of special benefits. (As previously stated, the jury found that there were no such benefits.) At the People's request the jury were correctly instructed as to the allowance of such benefits, if any, resulting from the new means of access provided by the frontage road. This requested instruction was followed by the instruction to which the People object. It is substantially in language used in *Beveridge* v. *Lewis* (1902), 137 Cal. 619, 625-626 [67 P. 1040, 70 P. 1083, 92 Am.St.Rep. 188, 58 L.R.A. 581]. In that case the language was used to state "the reasons usually given for the disallowance of credit for [general] . . . benefits." ▬▬▬ The instruction complained of reads as follows:

"You are instructed that the chance that land will increase in value as population increases and new facilities for transportation and new markets are created is an element of value quite generally taken into consideration in the purchase of land in estimating its present market value. If a part of one's property is taken for the construction of a highway, he stands in reference to the other property not taken like similar property owners in the neighborhood. His neighbors are not required to surrender this prospective enhancement in value in order to secure the increased facilities which the highway will afford. If he is compelled to contribute all that he could possibly gain by the improvement while others in all respects similarly affected by it are not required to do so he does not receive the equal protection of the law. The work is not being done for his benefit. The law will not imply a promise on his part to pay anything toward it.

"To compel him to give up or pay full value for his share of the common or general benefit while others are allowed to retain it is to deny him equal protection of the law.

"Unless there is a special benefit to the remaining land of this nature you cannot consider the general benefit, if any,

accruing to the public generally by reason of the construction of the proposed improvement.''

This instruction, the People say, is argumentative, and the jury should have been instructed as to the law only, and not as to the reasons for not allowing general benefits as a deduction from severance damages. It does not appear that the instruction stated the law erroneously or that the jury could have been misled by the instruction. Perhaps it was unnecessary to explain to them the theory that the deduction of general benefits from severance damages would be a denial of equal protection because other land in the neighborhood might equally benefit without being chargeable for such general benefit, but there is no showing that the People were prejudiced because the jury were informed of this theory. We find no miscarriage of justice.

For the reasons above stated the judgment is affirmed.

Shenk, Acting C. J., Carter, J., and Spence, J., concurred.

EDMONDS, J.—I find no justification in the record nor in the applicable principles of law for holding that the two parcels of land owned by the defendants constitute but one for the purposes of condemnation. Also, in my opinion, there is no basis for the conclusion that the defendants are entitled to severance damages as to the beach property because it, and the landward property, have not been put to diversified uses.

In holding that section 2631 of the Political Code, which was in effect at the time the defendants' predecessors in interest conveyed a part of their land for highway purposes, a majority of the court disapproves the construction of the statute placed upon it many years ago and not since challenged. In *Las Posas Water Co.* v. *County of Ventura,* 97 Cal.App. 296 [275 P. 817], the court said: ''It should be borne in mind that this section has no reference to the fee title to the land which is servient to the easement. The fee title may belong to the owner of the adjacent property or it may belong to one who owns only the property which is subject to the easement itself. It may be owned by a private individual or corporation or by the county or by the state.'' (P. 300.) It is now said that the decision is out of line with cases which ''have recognized that while that section was in effect the public by acquiring land for a highway acquired only the rights described in such section.''

Briefly, those cases held as follows: In *Wright* v. *Austin*, 143 Cal. 236 [76 P. 1023, 101 Am.St.Rep. 97, 65 L.R.A. 949], the acquisition of only an easement was not disputed; the question was whether digging a well on bordering land for the purpose of sprinkling down the road was what "may reasonably be said to be 'incident to'" the easement. *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699 [117 P. 906, 36 L.R.A.N.S. 185], concerned land "across which for over forty years a public wagon road or highway . . . [had] existed." The simple issue was whether the erection of poles by the power company pursuant to a purported right granted the company by the board of supervisors, was reasonably incident to the maintenance of the road where lighting the highway was not contemplated.

In *Olaine* v. *McGraw*, 164 Cal. 424 [129 P. 460], the board of supervisors had declared 12 feet of the bed of a creek to be a public highway. By that action, it was held, only an easement had been acquired. *Porter* v. *City of Los Angeles*, 182 Cal. 515 [189 P. 105] was an action for trespass for damages incurred to plaintiff's house by reason of the city's building a tunnel under the fronting street. The court presumed that plaintiff owned the fee to the center of the street because there was nothing in the record to the contrary. *City of Oakland* v. *Schenck*, 197 Cal. 456 [241 P. 545] was an eminent domain proceeding where the city sought only an easement for street purposes. It was held that, despite the fact that the resulting judgment did not state the purpose for which the land was acquired, the judgment "carries no greater estate than a mere easement in the property for the uses stated."

In *City of Burlingame* v. *Norberg*, 210 Cal. 105 [290 P. 587], the city asserted ownership in fee to land over which it maintained a storm sewer system. The sewer system had been installed in the first instance as the consequence of the conveyance of an easement for that purpose. The city's claim of complete ownership was based on express dedication, prescription, and adverse user. Said the court: "Clearly it is not necessary in the dedication of an area to a public use to convey the title in property. . . . If the city were condemning a right of way for a storm sewer, it could get no more than" an easement. (Pp. 107-108.) It was held that the city had not acquired the fee by any method shown by the record.

*People* v. *Olsen*, 109 Cal.App. 523 [293 P. 645], was an eminent domain proceeding for highway purposes, and the court said: "Title to land acquired by condemnation for highway purposes vests in the public only an easement. . . ." (P. 532.) In *People* v. *Church*, 57 Cal.App.2d Supp. 1032 [136 P.2d 139], the question was whether in a prior condemnation suit concerning a highway, the State necessarily had taken certain service station equipment affixed to the land. It was held that the answer depended upon whether the improvements had to be removed for use of the land as a right of way, and whether that removal caused them to lose a substantial part of their value.

Neither the language of the opinions in those cases nor the factual bases upon which they were decided justifies the conclusion that the state could not by purchase acquire the fee with respect to land to be used as a highway. Just 50 years ago, this court considered the statute here in controversy and characterized it as "the formulation of the general rule laid down in the books and decided cases when treating of highways as easements, which they are." (*Wright* v. *Austin, supra,* p. 239.) By the express terms of the enactment, the Legislature declared that the state could acquire a right of way only where the interest was acquired by "taking" (condemnation or prescription), or by "accepting" (dedication). This is the plain meaning of the statute and I find no basis for holding that it prohibited the state from acquiring a fee by the deed which it obtained from Thompson's predecessors in interest.

That deed, I would hold, may not reasonably be construed as conveying less than the entire fee. The majority conclude that the terms of the deed, read as a whole and the *habendum* clause considered, show an intention to convey only an easement. But only when the operative words of a grant are doubtful, may recourse be had to its recitals to assist the construction. (Civ. Code, § 1068.) The operative language in the deed is: ". . . do hereby grant to The State of California the real property . . . described as follows: . . . To HAVE AND TO HOLD to said grantee, its successors and assigns." There is no ambiguity; that language conveyed the entire fee. (See Civ. Code, § 1092.) The *habendum* clause commences with "To HAVE," and does not purport to limit or cut down the estate conveyed in the granting clause.

The phrase relied upon by the majority to cut down

the estate granted in the premises is as follows: "It is hereby agreed that as a further consideration for the granting of said right of way. . . ." Those are not "operative words" of the grant. They constitute mere recitals and should not be held to limit the estate granted.

Furthermore, although technically a "right of way" is an easement, "As generally used . . . when applied to railroads, canals, and similar instrumentalities, [it] has no exact, well-defined meaning, but often is susceptible of a two-fold signification. It is used indiscriminately to describe, not only the easement, or special and limited right to use another person's land, but as well the strip of land itself that is occupied for such use." (*Anderson* v. *Willson*, 48 Cal.App. 289, 295 [191 P. 1016].) Certainly, a highway is a sound analogy. In view of the clear language of the granting clause, there must be something more than a reference to "right of way" to cut down a clear grant of the fee.

The majority declare that where "the owner's land is merely crossed by the easement of another, the fee remaining in him, and the sections so made are not actively devoted, as so divided, to wholly different uses, they are to be considered actually contiguous and so as a single parcel or tract." As thus stated, that rule requires a preliminary determination before the severance damages of the interference with the highest and best use of the two parcels as a unit, may be considered.

If a preliminary determination is necessary, then it is not whether there is diversity of use, but whether there is an existing unity or continuity of use. "[U]nity of use is the principal test. . . ." (18 Am.Jur., p. 910.) " 'To constitute a *unity* of property between two or more contiguous but *prima facie* distinct parcels of land, there must be such a connection or relation of adaptation, convenience, and *actual* and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they *are* used.' " (*City of Stockton* v. *Marengo*, 137 Cal.App. 760, 766 [31 P.2d 467], quoting with approval from 20 C.J., Eminent Domain, § 190, p. 737; emphasis added; see, also, annotation, 6 A.L.R.2d 1197, 1212.) These authorities indicate that there must be a present use of both parcels, which use is a common one with unity of purpose, so that an interference with the use of

one parcel affects directly the present use of the other. In this case the beach property was not in use at the time of the trial and accordingly, the award of severance damages cannot rest upon unity of use.

For these reasons I would reverse the judgment.

Traynor, J., concurred.

Appellant's petition for a rehearing was denied July 7, 1954. Gibson, C. J., Edmonds, J., and Traynor, J., were of the opinion that the petition should be granted.