[Civ. No. 9584. Third Dist. May 10, 1960.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Respondent, v. S. R. CHASTAIN et al., Defendants; ROGER JESSUP FARMS (a Limited Partnership), Appellant.

C. Ray Robinson, James A. Cobey and Duane W. Dresser for Appellant.

Robert E. Reed, Holloway Jones, Jack M. Howard, Joseph F. DeMartini, Thomas B. Adams and Robert S. Webber for Respondent.

PEEK, J.—The present controversy arises out of an eminent domain proceeding instituted by plaintiff by which it sought to condemn for freeway purposes certain lands owned by defendant Roger Jessup Farms. At the conclusion of the trial the jury returned a verdict in favor of Jessup in the sum of $15,640.80. Of that sum $6,510 represented the value of the land, and the remainder, $9,130.80, represented the severance damages. A judgment was entered in accordance therewith. Defendant then moved for a new trial which was

denied, and this appeal followed. Although S. R. Chastain was joined as a defendant in the original action, he is not a party to this appeal. The sole question presented concerns the issue of severance damages.

The record shows that defendant is the owner of approximately 2,800 acres of land in Madera and Merced Counties which is used unitarily for agricultural purposes. United States Highway 99 runs diagonally through the property in a northwesterly and southeasterly direction so that roughly 2,000 acres are situated on the west side of the highway and 800 acres on the east side. The land immediately between the 2,000 acres and the highway is subject to an easement to the Southern Pacific Company. The ranch headquarters are situated on the smaller parcel, and while the highway remained in its previous condition, the defendant, in the course of its agricultural activities, could and did cross over the highway directly in front of these buildings, as well as at three other points. The crossings had been so used for more than 40 years.

Pursuant to the over-all plan to improve the highways of this State, plaintiff proposed to widen the existing roadbed of United States Highway 99, constructing fences on either side thereof, and closing all of the crossover points on the highway by constructing concrete barriers between the north and south lanes of traffic, the result being that defendant would be compelled to travel from its headquarters to the southernmost crossover, a distance of more than 11,000 feet, and to the north a distance of more than 10,000 feet.

The testimony of the two expert witnesses called by plaintiff upon the issue of severance damages was that defendant would be damaged in the sum of $8,400 and $13,700, respectively. Only one expert witness was called by the defendant, and it was his opinion that such damages would be approximately $47,000. When he attempted to support this figure by showing the increased cost to defendant by reason of the loss of the right to cross the highway as it had been able to formerly, plaintiff moved to strike all such testimony on the ground that it was not a proper element of severance damages. The trial court, in sustaining the objection, instructed the witness to limit his testimony merely to the damages resulting from a denial of access to Highway 99, excluding any question of the right of crossover as it previously existed. It is this ruling by the court which forms the sole basis of defendant's appeal.

Defendant relies primarily upon *People* v. *Thompson,* 43 Cal.2d 13 [271 P.2d 507], arguing that the right to cross the

highway was an element to be considered by the jury in its determination of severance damages.

 It is clear from the holding in the Thompson case that there are situations wherein the loss of the right to cross over a highway is a proper element for the jury to consider in determining severance damages. In that case, as here, a state highway divided the defendants' property. Again, as here, the State proposed improvements identical to those planned in the present case. The court held in part: "Defendants' expert witnesses were allowed to testify, over objection, that in arriving at their opinions as to severance damages, they considered that the free passage across the highway between the beach property and the landward property was cut off, thus lessening the value of the property for development as a unit for residential and business purposes, and their testimonies indicated the greater value of the properties had they not been separated by the freeway and fence. *This testimony was relevant (when the property is regarded as a unit)* to the issue of market value . . ." (Emphasis added.)

There is no question but that here, as in the Thompson case, free passage across the highway between the two parcels of land will be cut off and the prior unity of use of the land will be permanently damaged by the proposed freeway and fences. It would therefore appear that the essential facts in the present case bring it squarely within the reason for the rule enunciated in the Thompson case.

The state, however, argues that the Thompson case is not in point, since there the defendant owned the land abutting both sides of the existing highway and hence had access rights on either side thereof, while here the land directly abutting the west side of the highway is subject to an easement of the Southern Pacific Company and therefore defendant had access rights on only one side of the highway. The state further argues that in any event it may destroy defendant's right to cross the mainline track, or the railroad itself may revoke the agreement between it and defendant. We find no merit in either contention. As to the first, the record clearly establishes a situation which, for all practical purposes, is similar to the Thompson case. Necessarily, therefore, such cases as *Holman* v. *State*, 97 Cal.App.2d 237 [217 P.2d 448], and *People* v. *Sayig*, 101 Cal.App.2d 890 [226 P.2d 702], relied upon by plaintiff are not in point. In each of those cases the land in question abutted upon only one side of the highway. Although the construction of a dividing strip in the center of

the highway may result in a loss in business, it is not a damage to the property on which the business is conducted. (*Rose* v. *State*, 19 Cal.2d 713 [123 P.2d 505].) Furthermore, section 7537 of the Public Utilities Code gives to the owner of land through which any railroad is constructed a right of ingress and egress; while Code of Civil Procedure, section 1248, subdivision 5, provides for such private crossings as are reasonably necessary or proper to connect the parcels of land severed by the easement.

It necessarily follows that the trial court prejudicially erred when it refused to allow defendant's expert to testify as to the damage resulting from defendant's loss of the right to cross the highway.

The judgment and order are reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied June 6, 1960, and respondent's petition for a hearing by the Supreme Court was denied July 6, 1960.