[L.A. Nos. 29896, 29897. In Bank. Dec. 16, 1971.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
ROBERT LEE WOLFE et al., Defendants and Appellants.

**COUNSEL**

Chester A. Price, Jr., for Defendants and Appellants.

Roger Arnebergh, City Attorney, Charles W. Sullivan, James A. Doherty, Assistant City Attorneys, and Lambert M. Javelera, Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**McCOMB, J.**—The city commenced this action in 1968 to condemn the fee in five adjacent parcels of real property in the Westwood area of Los Angeles for public off-street parking. Parcel 3 thereof is owned by defendants. They also own another piece of real property (herein 3-A) which the city did not seek to condemn and which is not physically contiguous to parcel 3. However, defendants claimed a right to severance damages to parcel 3-A, pursuant to section 1248 of the Code of Civil Procedure,[1] by reason of the taking of parcel 3 under the special circumstances of this case.

The pretrial conference order states that the parties demanded a jury trial on the issues of value but agreed to an interim trial by the court on the issues raised as to the validity of the ordinance authorizing the condemnation, whether the taking was for a public purpose, and whether the property being sought by the city was an entire taking or the taking of a parcel from a larger parcel. At the interim hearing held on September 3, 1969, defendants waived the first two issues. Very little evidence was presented on the remaining issue. The court held that there was a single taking, thus denying defendants' claim for severance damages, and set dates for further pretrial conference and jury trial. It granted defendants'

---

[1]Section 1248 provides that the court or jury must hear such legal testimony as may be offered by any of the parties to the eminent domain proceedings, and thereupon must ascertain and assess "2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

motion to file amended answer and cross-complaint in inverse condemnation but held that the issues raised by those pleadings had already been resolved by the court. Minute order of October 23, 1969, shows that the parties agreed to the sum of $131,000 as the fair market value of parcel 3; that defendants reserved their right to a possible appeal on any claim for just compensation other than fair market value; and that defendants' motion to cite "section 12.21A IVm of the zoning code as further authority and reconsideration of the issues" was denied.

Defendants appealed from the interlocutory order of September 3d and from the judgment entered December 6th pursuant to the order of October 23, 1969. The order of September 3d is non-appealable and the purported appeal therefrom is hereby dismissed.

■ The question of what constitutes a "parcel" within the meaning of section 1248 of the Code of Civil Procedure is a matter of statutory interpretation. And since this section is part of the statutory scheme to carry out the constitutional mandate that just compensation be given for the taking of private property for public use (art. I, § 14, Cal. Const.; 14th Amend., U.S. Const.; *Chicago, Burlington etc. R'd* v. *Chicago* (1897) 166 U.S. 226, 233-241 [41 L.Ed. 979, 983-986, 17 S.Ct. 581]), it is also a matter of constitutional import.

Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings (*United States* v. *Miller* (1943) 317 U.S. 369, 375-376 [87 L.Ed. 336, 343-344, 63 S.Ct. 276, 147 A.L.R. 55]). (See 4 Nichols, Consequential Damages, § 14.31, p. 715; 27 Am.Jur. Eminent Domain, § 310, p. 124; 29a C.J.S. Eminent Domain, § 140, p. 589; 17 Cal.Jur.2d, Rev. Eminent Domain, § 145, p. 818; Annot. 6 A.L.R.2d 1199; 3 Witkin, Summary of Cal. Law (1960) Severance Damages, § 236, p. 2046; Cal. Condemnation Practice (Cont. Ed. Bar 1960) Severance Damages, § C, pp. 66-75.) ■ In order to show that a part taken is part of a larger parcel unity of the property must be shown. ■ "Three elements must be present to constitute unity of property, namely, *unity of title (San Benito County* v. *Copper Mtn. Min. Co.* [1935] 7 Cal.App.2d 82 [425 P.2d 428]; *City of Stockton* v. *Ellingwood* [1929] 96 Cal.App. 708 [275 P. 228]); *ordinarily, contiguity (People* v. *Ocean Shore Railroad, Inc.* [1948] 32 Cal.2d 406, 424 [196 P.2d 570, 6 A.L.R.2d 1179]); and *unity of use (City of Menlo Park* v. *Artino* [1957] 151 Cal.App. 2d 261, 270 [311 P.2d 135]; *City of Stockton* v. *Marengo* [1934] 137 Cal. App. 760, 766 [31 P.2d 467])." (*People* ex rel. *Dept. Public Works* v. *Dickinson* (1964) 230 Cal.App.2d 932, 934 [41 Cal.Rptr. 427].) (Italics added.)

■ The legal issues raised on this appeal are whether physical con-

tiguity is *always* necessary and, if not, whether this case comes within one of the exceptions. The first issue is easily answered by the many decisions in which the appellate courts of this state have announced the general rule to be that "ordinarily" physical contiguity is required and in which they have determined that a particular set of facts did or did not bring particular parcels of land within the exception. These decisions, hereinafter briefly referred to, indicate that the resolution depended upon the facts of the case and upon the sound discretion of the courts in analyzing those facts, which sometimes were susceptible of more than one interpretation.

In 1951 defendants, owners of parcel 3-A, constructed thereon a building containing ground floor stores and three stories for medical offices. This lot fronted on Weyburn Avenue and had parking spaces for eight or nine cars. There was at that time a parking lot directly behind the medical office building, but it was not then, and it is not now, available to defendants' tenants and employees for monthly parking. It is now a validating lot for transient parking. Monthly parking has always been required by defendants' tenants. It is provided to them, without separate charge, under the lease agreements. Defendants have always provided parking, even when they had to go out and find additional parking, to carry out their leases and meet their tenants' needs.

After the building was erected the city enacted a more restrictive zoning ordinance.[2] It required that parking be provided within 750 feet of a com-

[2]Ordinance No. 111,049, amending Municipal Code of the City of Los Angeles, "Zoning." The zoning provisions were not pleaded or admitted into evidence but the parties referred to them in oral argument and in their briefs. The court may take judicial notice of their content, pursuant to Evidence Code sections 452, subdivision (b), 455, subdivision (a), 459, subdivisions (a) and (c). (See also *Jordan* v. *County of Los Angeles* (1968) 267 Cal.App.2d 794, 798 [73 Cal.Rptr. 516].)

Section 12.21 A-4 provided: "*Off-Street Automobile Parking Requirements.* A garage or an off-street automobile parking area shall be provided in connection with and at the time of the erection of each of the buildings or structures hereinafter specified, or, at the time such buildings or structures are altered, enlarged, commenced or increased in capacity by the addition of dwelling units, guest rooms, floor area or seating capacity. The parking space capacity required in said garage or parking area shall be determined by the amount of dwelling units, guest rooms, floor area, or seats so provided, and said garage or parking area shall be maintained thereafter in connection with such buildings or structures."

Section 12.21 A-4 (g) provided: "*Location of Parking Area.* The automobile parking spaces . . . shall be provided either on the same lot as the use for which they are intended to serve or not more than 750 feet distant therefrom; said distance to be measured horizontally along the streets between the two lots, except that where the parking area is located adjacent to an alley, public walk or private easement which is easily useable for pedestrian travel between the parking area and the use it is to serve, the 750 foot distance may be measured along said alley, walk or easement."

Section 12.21 A-4 (m) provided in part: "*For Existing Buildings.* Off-street auto-

mercial building measured along streets, walks, alleys or private easements as long as the building was maintained. Where automobile parking space being maintained in connection with a pre-existing building was insufficient to meet the new requirements, the building could continue to operate as a "non-conforming" building. If parking spaces were not provided the building could not be altered or enlarged.[3] Defendants' building became a "non-conforming building" for lack of parking spaces.

In order to remedy this situation and to provide parking facilities for building tenants and employees defendants in 1959 purchased parcel 3. The distance between the two parcels is well within the 750 feet required by the ordinance. It is 250 feet if one walks through a public alley, across a public parking lot and over a public street, or 550 feet if one walks only along public streets. Parcel 3 is bounded on the west by a public alley and on the south by Broxton Avenue, which intersects with Weyburn Avenue within one block of each parcel. Defendants have lawful access over public roads between their parcels. They do not own the fee underlying the public roads, the alley, or the private property which separates their parcels. Availability of the public parking lot which extends between Weyburn Avenue and the alley is not referred to by the parties.

Defendants did not consult the city prior to purchasing parcel 3 to determine the exact parking requirements under the ordinance. They did read the ordinance and satisfied themselves that they had to comply. Parcel 3 was the closest property which it was feasible for them to purchase at that time. There are no comparable facilities at the present time for rent or for lease.

The city was unaware of the common use of these parcels until after it condemned parcel 3. The city attorney stated at the hearing below that the city had never investigated the exact requirements for parking spaces for building 3-A,—that defendants were free to use parcel 3 as they wished; that the city would not hold them to the common use or require that the parcels be sold together; and that the city was not seeking any title or interest in parcel 3-A. The city also urged that defendants were not entitled to damages to parcel 3-A merely because it was subject to more

---

mobile parking space being maintained in connection with any existing main building or structure shall be maintained so long as said main building or structure remains. . . ."

[3]Section 12.23 C2 provided in part: "Where the automobile parking space being maintained on a lot in connection with a building . . . at the time this article became effective is insufficient to meet the requirements of Sec. 12.21-A or where no parking space has been provided, said building or structure may not be altered or enlarged . . . unless additional automobile parking space is supplied and maintained to meet the requirements of Sec. 12.21-A. . . ."

restrictive zoning. However, the trial court correctly pointed out that defendants were not seeking damages because of the enactment of the ordinance but were seeking severance damages for taking away the use of parcel 3-A.

The court held that the unitized use of these parcels could be considered in evaluating the damages for the taking of parcel 3, but that there was no taking as to parcel 3-A, the city seeking no interest therein. It did not consider the question whether the unitized use was sufficient to bring this case within an exception to the rule requiring physical contiguity.

*Unity of Title:* There were several owners, all joined as defendants herein. No issues of fact or law are raised with regard to unity of title.

*Contiguity:* The general rule in this state is that contiguity is "ordinarily essential." (*People* v. *Ocean Shore Railroad, supra,* 32 Cal.2d 406, 423; *People* v. *Thompson* (1954) 43 Cal.2d 13, 18 [271 P.2d 507]; *People* ex rel. *Dept. Public Works* v. *Dickinson, supra,* 230 Cal.App.2d 932, 934.)

*Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392 [153 P. 705] has frequently been cited as requiring physical contiguity.[4] The factual situation was somewhat comparable to this one. There a condemnee sought severance damages to its planing mill and mill business by reason of the condemnation of a tidelands leasehold upon which it conducted a wharf and lumber yard. The two parcels were some 300 to 400 feet apart, the condemnee did not own the intervening fee, and there was convenient access by public streets between the parcels. The opinion points out that the condemnee did not seriously argue that the parcels were physically contiguous. It stresses the fact that the damages sought were for non-compensable injury to business (pp. 398-399).

*People* v. *Ocean Shore Railroad, supra,* 32 Cal.2d 406, involved two pieces of property, formerly used for railroad purposes, separated by a public park over which their tracks formerly ran. Many years before the condemnation proceedings the railroad service had been discontinued, the tracks taken up, but the railroad retained no easement or right of access across the intervening park. The issue was whether a prospective use constituted an integrated unitary use of the separate parcels and it was held that it did not. This court stated that the "primary test for severance

---

[4]See 4 Nichols, Eminent Domain, *supra,* page 715; 6 A.L.R.2d, *supra,* page 1207; 3 Witkin, Summary of Cal. Law, *supra,* page 2046; *East Bay Mun. Utility Dist.* v. *Kieffer* (1929) 99 Cal.App. 240, 248 [278 P. 476, 279 P. 178]; *People* ex rel. *Dept. Public Works* v. *Fair* (1964) 229 Cal.App.2d 801, 804 [40 Cal.Rptr. 644].

damages is contiguity, and while an existing unity of use may warrant an award, none can be allowed where, as here, the property is not contiguous and there is merely a possible or prospective, and not a presently existing, unity of use." (P. 424.) Lest there be any misunderstanding as to this holding this court also stated (p. 423): "Under section 1248 of the Code of Civil Procedure, however, *contiguity is ordinarily essential* and the owner is not entitled to severance damages for injury to other separate and independent parcels. [Citations.] There may be a right to an award of severance damages in some cases where the property, *though not physically contiguous,* is being devoted to an existing unity of use. [Citations.] But such damages are *ordinarily limited to contiguous property,* and the mere fact that there is a possible or prospective use of separate properties as a unit, or that they are susceptible to a common use, will not justify the allowance of severance damages." (Italics added.)

In *People* v. *Thompson, supra,* 43 Cal.2d 13, an exception to the general rule was found. There parcels of land under common ownership were bisected by a public highway in which defendants owned the underlying fee and over which they had unlimited access prior to condemnation of a strip of one parcel and prior to the construction by the state of a highway fence. Even under a weak showing of unified use and lack of physical contiguity, the parcels were found to be one, and the award of severance damages upheld.

In 1964 exceptions to the general rule were considered in *People* ex rel. *Dept. Public Works* v. *Dickinson, supra,* 230 Cal.App.2d 932; *People* ex rel. *Dept. Public Works* v. *Fair, supra,* 229 Cal.App.2d 801; *People* v. *Bowers,* 226 Cal.App.2d 463 [38 Cal.Rptr. 238]. In *Dickinson,* defendants owned noncontiguous parcels which they used for an automobile salvage and wrecking business. They claimed severance damages for the taking of one parcel, urging that their easement of access over the 500-foot intervening property owned by others was sufficient to make their parcels contiguous under section 1248. The court held that it did not but pointed out that the nature of the easement was in doubt. It stated that it made no determination whether conjunction would have been effected had the easement been shown to be appurtenant. In *Fair,* defendants owned orchard farms on either side of a public highway. The state owned the underlying fee in the highway. Defendants had no prior direct access to the intervening highway but only to a road which intersected the highway. The parcels were held to be separate. In *Bowers,* defendants owned grazing land on either side of a strip which was owned by other persons, over which they had no access rights, and which was completely fenced off from their properties and was used for other purposes.

The parcels were held to be separate. In *People* v. *Chastain* (1960) 180 Cal.App.2d 805 [4 Cal.Rptr. 785], defendants owned farming property on either side of a highway. Their degree of access was reduced after the state made the highway into a limited access freeway. The parcels were held to constitute one for severance purposes. In the above cases where lands were physically separated by highways and private land the courts took into consideration the degree of access before and after the taking, whether the state or the other persons owned the underlying fee, and the unified use (or lack of diversity of use) of the separated parcels.

Each relevant fact must be analyzed and all of the facts considered in order to determine unity in a condemnee's claim for severance damages.

The question is raised as to what is the controlling factor. *Oakland* v. *Pacific Coast Lumber etc. Co., supra,* 171 Cal. 392, 398,[5] resisted a claim that unity of use should be regarded as the controlling and determinative factor in determining "contiguity" whenever the question arises.

Unity of use if not the controlling factor is relevant, however, and may be considered where the properties are not physically contiguous. In *People* v. *Thompson, supra,* 43 Cal.2d 13, 23, this court quoted with approval from 18 American Jurisprudence 910-911, "[T]he general rule is stated: 'In determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test and . . . it is not considered a separate and independent parcel merely because . . . the two tracts are separated by a highway . . . .' " It also quoted, in the same context, from 29 Corpus Juris Secundum, page 1008, section 152, " 'Each case must be governed by its own circumstances.' "

Where parcels are physically distinct, there must be such a " 'connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used.' "

---

[5]"[I]f unity of use is the controlling consideration, it can matter not how far in fact the pieces of land are separated. A factory may be in one county, its warehouse in another, its principal sales agency in a third; any interference with any of the three properties would of necessity be an interference with the unity of use of them all, and if appellant's position is sound, damages to the other two may be recovered for the taking of or an injury to the third. . . . It is quite within the power of the legislature to declare that a damage to that form of property known as business or the goodwill of a business shall be compensated for, but unless the constitution or the legislature has so declared, it is the universal rule of construction that an injury or inconvenience to a business is *damnum absque injuria,* and does not form an element of the compensating damages to be awarded."

(*City of Stockton* v. *Marengo* (1934) 137 Cal.App. 760, 766 [31 P.2d 467]; see also *City of Stockton* v. *Miles and Sons, Inc.* (N.D. Cal. 1958) 165 F.Supp. 554, 564.) ■ "The law, generally speaking, is that where there is actual and existing unity of use and purpose, the separation of the tracts in question by . . . highways . . . is without legal consequence so long as there is an actually lawfully used means of access between the tracts."

*Question: Do the facts stated suffice to bring this case within an exception to the requirement of physical contiguity?*

*Yes.* The facts show constructive or legal contiguity, although not actual physical contiguity, a strong showing of interdependent present use, and unity of ownership.

The congested nature of Westwood can be inferred from the testimony of Richard C. Wolfe,[6] from the zoning requirements, and from the fact that the "public necessity" for which parcel 3 was condemned was for use as public off-street parking. ■ This court may take judicial notice of the fact of life that availability of parking facilities is essential to commercial enterprises in highly developed areas.

The effect of the zoning ordinance was to require defendants to obtain additional parking if they wished to avoid the status and economic restriction of having a nonconforming building. In enacting the ordinance the city took into effect the practicalities of obtaining and providing parking facilities, and allowed parking to be provided within 750 feet as measured along streets, walks, alleys or private easements. Defendants acquired and provided parking well within the limits set. The city should not now be heard to require physical contiguity when it condemns the parking facilities so acquired. Equity requires a finding that there was constructive contiguity for both purposes.

Nonownership of the fee underlying the private property is not a determinative factor here because of the strength of other factors. Non-

---

[6]Wolfe testified that defendants acquired the parking lot in 1959 to supply additional parking spaces for building 3-A, that this brought building 3-A within the zoning ordinance, that without parcel 3 there are not sufficient parking spaces, that the loss of this parking will be a total obstacle to renting the office spaces in the building, and that it will become obsolete entirely except for the ground floor. No additional charge is made to the tenants, it is included in the printed rental schedule. The only questions asked on cross-examination were whether he believed that by the purchase he had complied with the zoning (answer yes), had he consulted first with the city (answer no), was the parking lot adjacent to parcel 3-A then improved or unimproved (answer, it was improved but not available to the tenants), and whether it is now a presently validating lot (answer yes).

ownership of the fee underlying the public street, alley, or public parking lot over which there was a public easement, is likewise immaterial under the circumstances. Nor are we here concerned with damage to access rights of abutting property owners. The street is not here considered as an extension of defendants' land merely because it provides lawful access (see *People* ex rel. *Dept. Public Works* v. *Dickinson, supra,* 230 Cal. App.2d 932; 6 A.L.R.2d, *supra,* 1201). But access measured by public streets, alleys and easements is relevant to showing compliance with the zoning ordinance, proximity, and the interdependent use of these parcels.

What is a reasonable distance between parcels in order to have constructive contiguity is a matter to be determined by the facts in each particular case. Here it is reasonable to consider the limits imposed by the zoning ordinance as being within permissible limits of contiguity.

No findings were made with regard to the applicability of the zoning ordinance nor the effect of the taking upon parcel 3-A. It may briefly be observed here that by complying with the zoning ordinance, defendants relinquished the status of a nonconforming building for building 3-A. The policy of the law is for elimination of nonconforming uses, and generally there can be no resumption of a nonconforming use which has been relinquished. (8a McQuillin, Municipal Corporations (3d ed.) §§ 25.189-25.199, pp. 36-52.) Enforced relinquishment is inequitable where no comparable facilities are available to meet zoning or tenant-occupancy requirements, as seems to be the case here.

The real difficulty in determining when to make an exception to the general rules laid down by the courts for determining unity of property in eminent domain proceedings, is (see 6 A.L.R.2d 1226-1227), in resisting two related tendencies: 1, to make the test of integrity the interrelation of the parts regardless of location, as where a factory is in the suburbs and a warehouse is in the city; and 2, to give damages for injury to business as such, that is, for future loss of profits, which are excluded by general principles under the prevailing rule that the question is one of market value of the property before and after the taking.

The relief here sought is not damages for future loss of profits but damages for a direct and substantial diminution in the value of the medical building on lot 3-A in conjunction with which lot 3 was being used, and for the impairment of a property right to continue the conforming use status of the medical building.

The trial court ruled that strict physical contiguity was necessary for defendants to recover severance damages. Unquestionably this accounted

for the failure of defendants to present further evidence on this issue. Exceptions have been recognized, as above noted, to the rule of strict physical contiguity were the factual situation was found to warrant such an exception. A full trial should have been held on this issue.

■ Here there were unity of ownership, reasonable physical proximity of the parcels, strong unity of use with lawful means of access, special need for private parking facilities in a congested city area, nonavailability of physically contiguous land, zoning which required that parking be provided but allowed 750 feet as being sufficiently contiguous to comply with such requirement, acquisition of noncontiguous land to provide parking and to obtain a conforming use status, and the loss of such status and loss of needed private parking by the condemnation of lot 3. An "ordinary" situation within the rule requiring strict contiguity was not presented.

The judgment is reversed and the case remanded for further proceedings on the issue of severance damages.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.