[No. A033551. First Dist., Div. One. Mar. 13, 1987.]

SABEK, INC., Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

164

Counsel

Amen & Keith, Philip Keith, W. Thomas Amen and William H. Paynter for Plaintiff and Appellant.

James P. Botz, County Counsel, and Stephen K. Butler, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**ELKINGTON, Acting P. J.**—Plaintiff Sabek, Inc. (*Sabek*) appeals from the superior court's judgment denying its mandate application, in favor of the above-named defendants, to whom we shall hereafter collectively refer as the *County*. The application sought to set aside a ruling of the *County* denying *Sabek* a "permitted use" to "operate a grocery store/convenience store" on real property owned by *Sabek*. It was entitled "Petition for Writ of Administrative Mandate [Code Civ. Proc., § 1094.5], or in the Alternative, for Writ of Mandate [Code Civ. Proc., § 1085]."

A pure question of law is posed by the appeal. It is whether, under the uncontroverted facts of the case, and as stated by *Sabek*, "the permitted use provisions, or the conditional use provisions, of the Sonoma County zoning regulations apply." *Sabek*, in effect, seeks to compel the *County* to perform a ministerial duty, i.e., to perform the ministerial act of granting a permit for a "permitted use" of real property under a zoning ordinance. (See *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 329 [109 P.2d 935].) For that reason we treat the proceeding, as apparently did the trial court, as commenced under Code of Civil Procedure section 1085.

The uncontroverted factual-procedural context of the case follows.

*Sabek* was the owner of a parcel of land which had been zoned by a *County* ordinance as C-2 (Retail business district). Grocery stores, and retail stores generally, were permitted in a C-2 zoning district. Such stores were entitled as a *matter of law* under the ordinance, to operate under a "*permitted use.*" Under the C-2 zoning ordinance such a permit "*shall* be issued if the proposed use . . . is in conformance with the provisions of [the ordinance]." (Our Italics.)

"Gasoline service stations" were *not* so permitted, as a *matter of law*, in a C-2 zoning district, unless they had been constructed prior to the C-2 zoning ordinance's enactment; in such a case they were allowed as a "*legal nonconforming use.*" Otherwise permits for a "nonconforming use" were granted only at the *discretion* of the appropriate *County* agency or official. And when such a "legal nonconforming use" structure was for any reason remodeled, at a cost exceeding 15 percent of its appraised value, it lost its "*legal* nonconforming use" status, and its continued operation was also subject to the *discretion* of an appropriate *County* agency or official.

A gasoline service station had, before the zoning ordinance's adoption, been maintained on the *property* by *Sabek* as a "legal nonconforming use."

*Sabek* thereafter converted what had been the lubrication racks of the *property's* service station into a "mini-mart" grocery store. The cost of such conversion appears to have been far in excess of 15 percent of the service station's appraised value.

According to *Sabek* the partial conversion of the service station into a mini-mart was made necessary for *economic reasons*; without it the service station would *not* be profitable.

While the service station and retail store were so maintained and operated in one building, the changed operation was observed by an agent or officer of the *County,* and *Sabek* was instructed to apply to the *County* for a discretionary "conditional use permit."

The mandate proceeding appears to have followed.

We are advised by *Sabek* as follows: "This appeal presents a question of apparent first impression. . . ." And he states, as noted: "[I]t requires a determination by this court whether the [mandatory] permitted use provisions, or the [discretionary] conditional use permit provisions, of the Sonoma County zoning regulation apply."

It seems profitable at this point to explore the rationale and purpose of "legal nonconforming uses" of zoning ordinances.

"The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected. . . . Accordingly, a provision which exempts existing nonconforming uses is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. . . . ■ However, the continued nonconforming use must be similar to the use existing at the time the zoning ordinance became effective . . ., and in determining whether the nonconforming use was the same before and after the passage of a zoning ordinance, each case must stand on its own facts. [¶]. . . The spirit underlying the ordinance is to restrict rather than to increase the nonconforming use . . . ." (*Edmonds* v. *County of Los Angeles* (1953) 40 Cal.2d 642, 651 [255 P.2d 772]; and see *Livingston Rock etc. Co.* v. *County of L. A.* (1954) 43 Cal.2d 121, 127 [272 P.2d 4].)

"The policy of the law is for elimination of nonconforming uses . . . ." (*City of Los Angeles* v. *Wolfe* (1971) 6 Cal.3d 326, 337 [99 Cal.Rptr. 21, 491 P.2d 813].)

"In enacting such ordinances, . . . municipal authorities have had in mind the injustice and doubtful constitutionality of compelling the *immediate removal* of the objectionable buildings already in the district, and have usually made express provision that these *nonconforming uses* may be continued, without the right to enlarge or rebuild after destruction. The object of such provision is the gradual elimination of the nonconforming use by obsolescence or destruction by fire or the elements, and it has been frequently upheld by the courts." (*Rehfeld* v. *San Francisco* (1933) 218 Cal. 83, 84-85 [21 P.2d 419].)

"Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement." (*County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683, 686-687 [234 P.2d 972].)

"[Z]oning legislation . . . looks to the future and the eventual liquidation of nonconforming uses." (*National Advertising Co.* v. *County of Monterey* (1970) 1 Cal.3d 875, 880 [83 Cal.Rptr. 577, 464 P.2d 33].)

"[I]t is the purpose of zoning to crystallize present uses and conditions and eliminate nonconforming uses as rapidly as is consistent with proper safeguards for those affected; that provisions for continuation of a nonconforming use are inserted in zoning ordinances because of the injustice and doubtful constitutionality of compelling immediate discontinuance of the nonconforming use; and that our courts and courts throughout the country generally, have always strictly construed such provisions . . . . [¶]'The underlying spirit of a comprehensive zoning plan necessarily implies the restriction, rather than the extension, of a nonconforming use of land, and therefore to whatever extent the particular act fails to make express provision to the contrary, a condition that the lawful nonconforming use of land existing at the time of the adoption of the ordinance may continue must be held to contemplate only a continuation of substantially the same use which existed at the time of the adoption of the ordinance, *and not some other and different kind of nonconforming use which the owner of the land might subsequently find to be profitable or advantageous. . . .*' " (Our italics; *County of Orange* v. *Goldring* (1953) 121 Cal.App.2d 442, 446-447.)

"[T]he fact that some hardship or financial injury to a property owner may result from zoning restrictions does not invalidate the imposing ordinance." (*Paramount Rock Co.* v. *County of San Diego* (1960) 180 Cal.App.2d 217, 233 [4 Cal.Rptr. 317].)

And "a type of business distortive of the zoning plans [*which*] *adds permanency to a nonconforming use* which the intent of the ordinance seeks to

eliminate" *is of course forbidden.* (*Paramount Rock Co.* v. *County of San Diego, supra,* 180 Cal.App.2d at p. 231.) "The ultimate purpose of zoning is to confine certain classes of buildings and uses to particular localities and to reduce all nonconforming uses within the zone to conformity as speedily as is consistent with proper safeguards for the interests of those affected. *Any change in the premises which tends to give permanency to,* or expands *the nonconforming use would not be consistent with this purpose.*" (*Dienelt* v. *County of Monterey* (1952) 113 Cal.App.2d 128, 131 [247 P.2d 925].) And: "[I]t is the general purpose to eventually end all nonconforming uses and to permit no improvements or rebuilding which would *extend the normal life* of nonconforming structures." (*Ricciardi* v. *County of Los Angeles* (1953) 115 Cal.App.2d 569, 576 [252 P.2d 773]; the italics of this paragraph are ours.)

■  It will be noted that maintenance of a service station, or a service station *and* a grocery store, in the same building on the *property* is the continued maintenance of a *nonconforming* use. And surely a change or alteration of the *property,* made necessary for economic reasons, tended to add *permanency* to its "legal nonconforming use."

■  Moreover, *Sabek* has established no prejudice on his appeal. He was allowed to seek a discretionary conditional use permit which, if granted, would have given him everything he seeks by the instant action and appeal. He was required to exhaust his administrative remedies before seeking judicial relief. (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 384 [216 Cal.Rptr. 733, 703 P.2d 73]; *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors* (1974) 38 Cal.App.3d 257, 266 [113 Cal.Rptr. 328].)  ■  And: "Anyone who seeks on appeal to predicate a reversal of [judgment] on error must show that it was prejudicial." (*People* v. *Archerd* (1970) 3 Cal.3d 615, 643 [91 Cal.Rptr. 397, 477 P.2d 421]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 353, p. 356.)

■  For the reasons and authority above stated, we perceive no reversible error.

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 27, 1987.