[No. A039222. First Dist., Div. Two. Feb. 8, 1989.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v.
BOARD OF PERMIT APPEALS FOR THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent;
ILYAS ABSAR, Real Party in Interest and Respondent.

COUNSEL

Louise H. Renne, City Attorney, and Judith Boyajian, Deputy City Attorney, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Jack Wholey, Barbara R. McEntyre and Browning, Wholey & McLoughlin for Real Party in Interest and Respondent.

OPINION

SMITH, J.—The City and County of San Francisco (the city) sought administrative mandate (Code Civ. Proc., § 1094.5) against a decision of its board of permit appeals (the board) overruling a zoning administrator's denial of a permit to allow real party in interest Ilyas Absar to retain an existing third dwelling unit on property zoned for single-dwelling use. On appeal from the superior court's order denying writ of mandate, the city urges, as it did below, that the board acted in excess of jurisdiction (*id.,* § 1094.5, subd. (b)). We will agree and therefore direct that relief be granted.

BACKGROUND

We draw the facts in part from the board's written findings, as to which there is no dispute except for one matter of interpretation to be discussed *post.*

The property in question, located at 114-116 Clarendon Avenue in San Francisco, was legally built in 1908 as a multistory, two-flat house. Starting in 1921 and continuing through the present, the property has been zoned for single-family use (now denominated an RH-1(D) district).

A third dwelling unit was built under a garage, but the evidence does not establish precisely when that occurred. Circumstantial evidence and letters from past neighbors fix the unit's existence perhaps as early as 1925 or 1926, but city records do not show permits for the construction. The lot on which the buildings sit was expanded in 1933 to include an adjacent 15-foot strip along the east side on which the third unit partially encroached, increasing the lot size by about 65 percent. Assessor's records show a merger of the two parcels into a single lot number "11" in 1947. During most of this

period, the property was owned by a Mr. Max Richter, who bought it in 1936. At some time, apparently during Richter's ownership, the attic of the main house was converted into a fourth dwelling unit.

The Richter family sold the property in 1970, and Absar purchased it from those owners in 1983. All city records, including a 1985 permit application signed by Absar, identify the authorized use of the property as two units.

The procedural aspects of this case began when Absar, charged in an enforcement action with building and housing code violations discovered in October 1985, applied to the city's department of public works for a permit to bring the building into compliance and to establish lawful use of the third unit. (He did not seek to legalize the attic unit.) The application was approved by the bureau of building inspection but on condition that both illegal units be removed. On Absar's request, the zoning administrator for the department of city planning (department) formally ruled on the application by letter, disapproving it on grounds that the third unit was not shown to be a nonconforming use in existence before the 1921 zoning and, further, that required off-street parking was not provided.

Absar timely appealed to the board. The matter was heard first on September 17, 1986, with both sides presenting evidence, and the hearing was continued to October 15 to allow Absar more time to document the date of the third unit's construction. At the resumed hearing, after considering letters from neighbors indicating that the third unit had been there since the mid-1920's or 1930's and evidence that electrical work might have been done on the unit in 1925, the board (comprised of four members that night) unanimously upheld the permit denial.[1]

Absar then requested a rehearing, stating that he now believed he could enlarge the garage to provide added off-street parking for the third unit. The board granted rehearing,[2] and the matter was heard on December 10. Absar

---

[1] In moving to uphold the department, Commissioner Engmann noted, as a matter of equity, that various owners had the benefit of four units since 1930, that neither the adjoining property owners nor the city (which had always assessed the property as having only two units) had benefited, and that the selling price to Absar ($300,000 in 1983) "obviously reflected" the illegality.

[2] Commissioner Fung, who had raised the problem of parking at the earlier hearing, explained on the record: "I am pretty sure the parking would not make any difference to [the zoning administrator] Mr. Passmore. [¶] I felt that perhaps resolving the number of parking spaces would perhaps mitigate against [a large lot size and loss of a fourth unit] as related to the nonconforming use in that particular zoning. [¶] So on that basis, and I do not know if I have the legal basis, I am going to make a motion for rehearing on that."

presented plans to expand the garage plus letters from two neighbors who supported retaining the third unit. The zoning administrator conceded that a parking space could be legally added but opposed approving the permit on grounds that legalizing the third unit would nevertheless violate density standards.

The board overruled the department, four to one, and adopted written findings. The zoning administrator subsequently requested a rehearing, urging that the added parking space was "not at issue" in the appeal, that the board's action amounted to a reclassification of property beyond the board's authority, and that the board's findings did not support the decision. Rehearing was denied.

The city sought administrative mandate in superior court (Code Civ. Proc., § 1094.5), which was denied after a brief hearing. This appeal by the city timely follows notice of entry of judgment.

### APPEAL

The superior court's scope of review in this case was to decide "[1] whether the respondent [board] ha[d] proceeded . . . in excess of jurisdiction . . . and [2] whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b), bracketed material ours.)

 The city contends that the board's action, which effectively authorizes maintenance of a third dwelling unit on property zoned for single-dwelling use, was both in excess of jurisdiction and an abuse of discretion. On the latter score, the city concedes that the board's findings are supported by substantial evidence but maintains that those findings do not support the decision. We agree.

The parties acknowledge the basic principles governing the board's exercise of authority. The board's existence and appellate jurisdiction over zoning decisions are derived from the city charter, which confers broad discretion and de novo powers of review. The board generally enjoys " 'complete power to hear and determine the entire controversy, [is] free to draw its own conclusions from the conflicting evidence before it and, in the exercise of its independent judgment in the matter, affirm or overrule the [zoning administrator's] action . . . .' " (*Board of Permit Appeals* v. *Central Permit Bureau* (1960) 186 Cal.App.2d 633, 640 [9 Cal.Rptr. 83], quoting

*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; S.F. Charter, §§ 3.650, 3.651, subd. (a).)[3] However, that power must be exercised within the bounds of all applicable city charter, ordinance and code sections, and any action on its part that exceeds those bounds is void. (*City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 400 [100 Cal.Rptr. 223]; *Four Seas Investment Corp.* v. *Board of Permit Appeals* (1978) 85 Cal.App.3d 526, 530 [149 Cal.Rptr. 571]; see generally *City & County of S.F.* v. *Superior Court* (1959) 53 Cal.2d 236, 250-251 [1 Cal.Rptr. 158, 347 P.2d 294].)

Specifically, the San Francisco City Planning Code (hereafter cited only by section) places strict limits on permit approvals whose effect is to alter zoning restrictions. Section 175(a) provides in part that "[n]o application for a building permit . . . shall be issued by any City department, which would authorize . . . maintenance of an existing use of any land or structure contrary to the provisions of this Code." Section 175(b) places the same restriction on approvals of applications which effectively alter or enlarge the occupancy allowed by the code. Further, section 308.2(e) states: "Upon the hearing of any appeal taken pursuant to this Section [governing board review of zoning administrator decisions], the Board of Permit Appeals may, *subject to the same limitations as are placed upon the Zoning Adminis-*

---

[3] Section 3.650 of the charter establishes the board as a five-member body whose members are appointed by the mayor for four-year terms. Section 3.651 defines its basic functions and powers as follows: "Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused.

"The board of permit appeals shall have and exercise the following powers: [¶] (a) To hear and determine appeals where it is alleged there is error or abuse of discretion in any order, requirement, decision or determination made by the zoning administrator in the enforcement of the provisions of any ordinance adopted by the board of supervisors creating zoning districts or regulating the use of property in the city and county;

"(b) To hear and determine appeals from the rulings, decisions and determinations of the zoning administrator granting or denying applications for variances from any rule, regulation, restriction or requirement of the zoning or set-back ordinances, or any section thereof. Upon the hearing of such appeals said board may affirm, change, or modify the ruling, decision or determination appealed from, or, in lieu thereof, make such other additional determination as it shall deem proper in the premises, subject to the same limitations as are placed upon the zoning administrator by this charter or by ordinance."

*trator by Charter or by this Code,* approve, disapprove or modify the decision or determination appealed from . . . ." (Italics added.)

■ The authorized use in the RH-1(D) zoning district at issue here is denoted " 'one-family dwelling,' " which is defined as "a building containing exclusively a single dwelling unit" (§ 102.5). It is undisputed that the subject property does not comply. The city notes that only three avenues exist for allowing a greater number of dwellings: (1) a nonconforming use; (2) a conditional use; or (3) a variance. (See generally *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 626-627 [339 P.2d 914].) Absar does not dispute this or argue that the board's action may be construed as granting a variance or conditional use. ■ Such findings would have to be express in any event. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-518 [113 Cal.Rptr. 836, 522 P.2d 12]; *Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353, 367 [244 Cal.Rptr. 240].)

■ Absar's position is that the board impliedly found the third unit to be a nonconforming use. "Nonconforming use" is defined in the code as "a use which existed lawfully at the effective date of this Code . . . " (§ 180 (A)(1)). More on point, "nonconforming structure" is defined as "a structure which existed lawfully at the effective date of this Code, or of amendments thereto, and which fails to comply with one or more of the regulations for structures . . . that then became applicable to the property on which the structure is located" (§ 180(a)(2)). The code declares that such uses and structures, "in failing to meet applicable requirements of this Code, are incompatible with the purposes of this Code . . . , and it is intended that these uses [and structures] shall be brought into compliance with this Code as quickly as the fair interests of the parties will permit." (§ 180(b).) The provisions comport with case law definitions of nonconforming use (*Hill* v. *City of Manhattan Beach* (1971) 6 Cal.3d 279, 285-286 [98 Cal.Rptr. 785, 491 P.2d 369]; *City of Ukiah* v. *County of Mendocino* (1987) 196 Cal.App.3d 47, 56 [241 Cal.Rptr. 585]) and with the generally perceived quick-abatement purpose underlying the doctrine (*Sabek, Inc.* v. *County of Sonoma* (1987) 190 Cal.App.3d 163, 166-168 [235 Cal.Rptr. 350]).

Absar notes that the evidence did not conclusively establish the date of the third unit's construction and argues that this uncertainty supports an implied finding that the unit *did* exist before 1921. His argument in favor of such an implied finding is based upon a reasonable inference in his favor or on the city's failure to disprove preexistence by stronger evidence.

There are several flaws in this thesis, one being the failure-of-proof argument. The city did not have to disprove the pre-1921 existence of the unit. ■ Rather, the burden is always on the party seeking to establish the nonconforming use to show that the use *did* preexist. ■ Absar maintains that it is unfair to expect a property owner to come up with documentation when so much time has elapsed and city records are incomplete, yet a contrary rule shifting the burden to the city would mean, as a practical matter, that some older properties could never be brought into compliance with modern zoning standards. As one commissioner in this case noted, the owners of the property had enjoyed the benefit of an illegally built third unit for about 50 years while the city never had the reciprocal benefit of increased assessments. The purchase price paid by Absar reflected the illegality of use. (See fn. 1, *ante*.) The code's purpose is to bring nonconforming uses into code compliance "as quickly as the fair interests of the parties will permit." (§ 180(b).) The "fair interests of the parties" were well served on both sides here.

Another flaw in Absar's argument is his misguided attempt to invoke the general rule requiring a court to imply necessary findings. ■ "The presumption that an agency's rulings rest upon the necessary findings and that such findings are supported by substantial evidence [citations], does not apply to agencies which must expressly state their findings and must set forth the relevant supportive facts. [Citation.]" (*Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 767, 773 [59 Cal.Rptr. 146, 427 P.2d 810].) Code section 308.2, which codifies the board's appeal powers in this situation, requires in subpart (e)(2): "In the case of any . . . determination of the Zoning Administrator, other than a variance, if the determination of the Board differs from that of the Zoning Administrator, it *shall*, in a written decision, *specify wherein there was error in interpretation of the provisions of this Code, or abuse of discretion on the part of the Zoning Administrator, and shall specify in its findings*, as part of such written decision, *the facts relied upon in arriving at its determination*." (Italics added.) ■ Conceding that the board failed to do this, Absar asks that we nevertheless *imply* that the board found a nonconforming use. That would directly contravene *Broadway, Laguna, supra,* which involved virtually identical code language in the context of a variance decision. (66 Cal.2d at p. 772, fn. 4.)

Even if we could overlook that problem and *imply* a finding of nonconforming use, such a finding would contradict *express* findings made in this case. The board found: "The City's records indicate that . . . *prior to* the introduction of a zoning classification in *1921, the property contained a two-unit structure*"; "The subject lot originally created in 1888 . . .

contained approximately 2800 square feet"; "*In 1933* when the lot was transferred, the easterly *15 feet of the lot immediately adjacent to the west was included*"; "*Around 1936,* but in any event prior to 1945, *the owner installed a third unit on the basement level,* approximately *30% of which is located on the newly appended parcel* on the basement level." The clear implication of these findings is that just two units existed in 1921. Absar tries to avoid this conclusion by noting that (1) the board found only that *the city's records* showed two units before 1921 and (2) finding the construction date of the third unit to be *around* 1936 leaves room for an implication of its existence in 1921.

This construction is strained. First, if the board literally meant to "find" only that city records indicated something, without drawing a conclusion for itself, it could have let the administrative record speak for itself.

Second, it is unreasonable on this record to stretch the language "[a]round 1936, but in any event prior to 1945," to include a date *15 years before* the start of that time period. A letter from one past resident indicated that the third unit existed in 1936, when Max Richter bought the property, and letters from two others could only verify that the unit existed since 1945. That accounts for the imprecise range of 1936 to 1945. The reason for the qualifier "around" 1936 is apparent from findings that annexation of the 15-foot strip to the lot occurred in 1933 and that the third unit occupied part of that annexation. Absar stated at the resumed first hearing that the garage already extended onto the strip at the time of its annexation, although he did not reveal the source of his information. At best, this evidence allowed a finding of existence as early as 1933. However, there is little evidence by which to fix an earlier date and no evidence at all by which to fix the date any earlier than 1925.[4]

This discussion shows that an implied finding of nonconforming use is irreconcilable with the board's express findings. It also shows that such an

---

[4] One past resident of the area wrote that Richter bought the property in 1926. Consistent with that recollection, he wrote: "Mr. Richter was a very handy person and used the basement for his workshop. He developed the flat below street level and above the basement over a period between 1926 and 1938. He also built the garage during the same period." In a cover letter to the board, however, Absar's counsel apologized that the writer was "quite elderly" and that the 1926 date given for Richter's purchase was in error—the correct date being 1936. Neither date, of course, would establish the third unit's existence in the determinative year, 1921. It is significant, however, that the letter writer recalled Richter having *developed* the unit over a period of years. Thus, whether construction began in 1936 or in 1926, the unit could not have been in existence any earlier.

At the rehearing, Absar presented a faded permit that he found posted on a wall next to the electrical box serving the third unit. The permit did not disclose what work had been authorized, but the date "1925" was discernible on it. As one commissioner noted, however, this evidence still did not fix the date as early as 1921.

implied finding would lack substantial evidence to support it. ■ The superior court applied the "substantial evidence" rather than the "independent judgment" test, and our scope of review is the same as the trial court's in that situation—to search for substantial evidence in light of the entire record. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144, 151 [93 Cal.Rptr. 234, 481 P.2d 242]; *Ross* v. *City of Rolling Hills Estates* (1987) 192 Cal.App.3d 370, 377 [238 Cal.Rptr. 561].) No one contends that a "fundamental vested right" was at stake so as to trigger independent judgment review by the court below. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395-396 [188 Cal.Rptr. 891, 657 P.2d 383].)

■ The board adopted numerous policy-related findings, and the city concedes that they are supported by substantial evidence. The board found that "[l]egalization of the third unit would affirmatively promote" objectives and policies such as preserving existing housing stock, discouraging demolition of sound structures, preserving the character and scale of the neighborhood and its ethnic diversity, maintaining affordable housing and a diverse economic base, and (due to building code modifications occasioned by a reclassification of the property) promoting fire and earthquake safety. Disapproval, conversely, was found to be inconsistent with the policy of conserving and protecting existing housing.

However, whatever merit there may be in those considerations, they cannot overcome the problem that approval of the permit application would increase the use of the property from two units to three units, in violation of the district's single-family dwelling zoning. ■ Findings must be *legally relevant* as well as supported by the evidence in order to support agency action. (*Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 773-774.) In terms of administrative mandate review, "Abuse of discretion is established if . . . the order or decision is not supported by the findings . . . ." (Code Civ. Proc., § 1094.5, subd. (b).)

■ The board's action allows the third dwelling unit contrary to the code. Absar does not argue that the board's policy-related findings are *legally sufficient* alone to allow a third unit. We are aware of no code provisions that would permit such a result. ■ "The Board of Permit Appeals is an administrative agency of limited jurisdiction possessing only such powers as have been conferred on it, expressly or impliedly . . . ." (*Four Seas Investment Corp.* v. *Board of Permit Appeals, supra,* 85 Cal.App.3d 526, 530.) Although broad policy reasons may exist for not following a zoning requirement in a particular case, the board is not a lawmaking body and has no power to disregard or amend the ordinances

which define its authority. (*Bernstein* v. *Smutz* (1947) 83 Cal.App.2d 108, 115 [188 P.2d 48].) Rezoning is a legislative function, something that the board cannot do under the guise of administrative action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 517; *Cow Hollow Improvement Club* v. *Board of Permit Appeals* (1966) 245 Cal.App.2d 160, 181 [53 Cal.Rptr. 610]; *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 245-246 [69 Cal.Rptr. 251]; *Richter* v. *Board of Supervisors* (1968) 259 Cal.App.2d 99, 105 [66 Cal.Rptr. 52].) ▆▆ Reclassification of property for zoning purposes must be done by the board of supervisors under its power to amend the code. (§ 302(a); S.F. Charter, § 7.501.)

Similarly, the board's findings of available off-street parking and large lot size cannot justify its action. Unless the third unit was allowable in the first place, off-street parking needs (see § 151) were legally irrelevant. Lot size was also irrelevant. The code treats lots alike, without regard to large size or whether the lot is the result of merged parcels. (§ 102.12; cf. *Hill* v. *City of Manhattan Beach, supra,* 6 Cal.3d 279, 285-286.) Moreover, the record shows that the property, even with the 1933 annexation, is squarely in the mid-range of lot sizes for that neighborhood.

The board purported to legalize the third unit. To allow such action to stand would, in effect, permit an appointed board, free of the electoral check that properly fetters the board of supervisors, to legislate and formulate policy. Lawmaking, in the form of rezoning of real property, is not within the powers of the board of permit appeals. This board acted without a legal basis and thus abused its discretion and acted in excess of its jurisdiction. (Code Civ. Proc., § 1094.5, subd. (b).)

The superior court gave no reason for denying writ of mandate except to state that the board's findings were supported by substantial evidence.[5] ▆▆ While the city conceded that the findings were supported by substantial evidence, it correctly contended that this was not enough to support the board's decision. The court below overlooked its duty to see that the findings were legally relevant. (*Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 767, 773; Code Civ. Proc., § 1094.5, subd. (b).) This presented a pure question of law because the question for the court was the legal effect of undisputed facts. (*Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 74-75 [227 Cal.Rptr. 667, 720 P.2d 15]; *Morrison* v. *State Board of Education* (1969) 1

---

[5] When pressed by the deputy city attorney at the hearing, the court did indicate that it was not relying on estoppel, a theory that Absar had urged, and no finding of estoppel was made. Absar has abandoned his estoppel theory on appeal.

Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 375].) ■ Substantial evidence review includes the duty to determine whether the agency committed errors of law in applying the facts before it. (*Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d 392, 395; *Apte* v. *Regents of the University of California* (1988) 198 Cal.App.3d 1084, 1092-1093 [244 Cal.Rptr. 312], mod. 199 Cal.App.3d 1099c; *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos* (1987) 192 Cal.App.3d 1492, 1499 [238 Cal.Rptr. 290].)

■ The superior court erred.

### DISPOSITION

The judgment denying the city's petition for a peremptory writ of mandate is reversed, and the cause is remanded with directions to enter judgment directing issuance of a peremptory writ compelling the board to set aside its decision overruling the zoning administrator's decision. The court shall grant such further relief as is appropriate and consistent with the views expressed herein.

Kline, P. J., and Benson, J., concurred.