[No. A088494. First Dist., Div. Three. Aug. 18, 2000.]

TENDERLOIN HOUSING CLINIC, INC., Plaintiff and Respondent, v. ASTORIA HOTEL, INC., Defendant and Appellant.

**COUNSEL**

Law Offices of Andrew M. Zacks, Andrew M. Zacks; Law Offices of Paul F. Utrecht and Paul F. Utrecht for Defendant and Appellant.

Stephen L. Collier for Plaintiff and Respondent.

**OPINION**

**PARRILLI, J.**—Under the San Francisco Planning Code, a property use that "lawfully existed" on the effective date of new zoning controls is deemed a permitted conditional use. Is the city's certification of hotel rooms as tourist units enough to establish their lawful existence for this purpose, or is proof of actual tourist use required? We hold that certification is sufficient.

The Tenderloin Housing Clinic, Inc., (Clinic) sued the Astoria Hotel, Inc. The Clinic claimed the hotel was violating San Francisco's Planning Code (Planning Code) and the city's Residential Hotel Unit Conversion and Demolition Ordinance by renting residential units to tourists. In 1981 the city had designated 79 of the Astoria's rooms as residential units and 13 rooms as tourist units. The Clinic sought injunctive relief and attorney fees, and damages for unfair business practice under Business and Professions Code section 17200. Trial before the court was bifurcated. After the first phase, the court resolved a number of issues. The Astoria contends the court erred by (1) refusing to refer the Clinic's claims to the San Francisco Planning Department under the primary jurisdiction doctrine; and (2) ruling that the Astoria could only establish a permitted conditional tourist use by proving that when the relevant Planning Code provisions came into effect on April 24, 1987, the hotel actually offered its 13 tourist rooms to tourists.

For the second phase of trial, the parties stipulated that the Astoria had regularly rented rooms to tourists since 1991. They also stipulated that the zoning administrator had informed the Astoria that if it could not show the 13 tourist rooms were "actually in tourist use" when the code provisions took effect, it would be required to obtain a conditional use permit. An appeal from this determination was pending before the city's board of appeals. After trial, the court ruled that because the Astoria presented no evidence of "lawful and permitted actual tourist use as of the effective date of the Planning Code," it had violated the Planning Code by renting rooms to

tourists without conditional use authorization. The court entered judgment enjoining the Astoria from renting any rooms to tourists.

The Astoria appeals from the judgment, contending (1) because 13 of its rooms were designated tourist units, renting to tourists was a permitted conditional use under the Planning Code without a use permit; (2) the trial court erroneously placed the burden of proving a prior nonconforming use on the Astoria; and (3) the court should have stayed the case pending administrative proceedings in the planning department. The Astoria's first contention is correct, and therefore we reverse the judgment. However, we agree with the Clinic that the trial court did not abuse its discretion by refusing to refer the Clinic's Planning Code claims to the planning department under the primary jurisdiction doctrine.

DISCUSSION

### 1. *The Court Properly Declined to Defer to the Planning Department*

■ The primary jurisdiction doctrine applies to claims originally cognizable in court, but involving regulatory issues within the special competence of an administrative body. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730].) The courts have "considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Id.* at p. 392; see also *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 453 [14 Cal.Rptr.2d 491, 841 P.2d 1011].) Here, it appears no party had initiated any administrative proceeding when the Astoria asked the trial court to defer ruling on the Clinic's claims. The Astoria presented its request as if the Clinic were required to first pursue its available administrative remedies, a claim it does not renew in this court, and one which has no place in primary jurisdiction doctrine. (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at pp. 390-391 [distinguishing between exhaustion of administrative remedies and primary jurisdiction doctrines].)

The record indicates that the Astoria itself, although it raised the primary jurisdiction doctrine as a defense in its answer, never sought an administrative ruling. Instead, three days after the court ruled against the Astoria in the first phase of trial, the Astoria's lessor, who is not a party to this action, asked the planning department to redetermine the issue of whether a conditional use permit was required for tourist rentals. We do not believe the interests of justice call for the suspension of court proceedings in such circumstances.

Furthermore, the trial court correctly observed that the matter before it involved no need for an administrative agency's factfinding expertise, but

rather concerned issues of statutory interpretation appropriate for judicial resolution. (See *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council, supra,* 4 Cal.4th at p. 454.) We recognize that uniform application of administrative law is one of the policies underlying the primary jurisdiction doctrine. (*Ibid.; Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 391.) In this case, we believe that policy is best served by publication of our decision.

## 2. *Certified Tourist Units Are Deemed a Permitted Conditional Use*

■ The Astoria is located in the Chinatown Community Business District. In this "Mixed Use District," tourist hotels are permitted as a conditional use subject to the provisions of the Planning Code.[1] (§§ 809, subd. (d), 810.55.) The code permits conditional uses in a Chinatown Mixed Use District "when authorized by the Planning Commission." (§ 803.2, subd. (b)(1)(B)(i).) The Astoria concedes it lacks such authorization. However, it contends it may rent 13 of its rooms to tourists under section 803.2, subdivision (b)(1)(B)(ii), which provides: "Any use or feature which lawfully existed and was permitted as a principal or conditional use on the effective date of these controls which is not otherwise nonconforming or noncomplying as defined in Section 180 of this Code, and which use or feature is not permitted under this Article is deemed to be a permitted conditional use subject to the provisions of this Code."

The trial court, and the zoning administrator, required the Astoria to have actually rented or offered to rent its designated tourist rooms to tourists in order to establish a lawfully existing conditional use under section 803.2, subdivision (b)(1)(B)(ii). We disagree. Under both the Hotel Ordinance and the Planning Code, the city's certification of the Astoria's tourist units sufficed to make tourist rental of those rooms a permitted conditional use.

The Hotel Ordinance defines "Tourist Hotel" as "[a]ny building containing six or more guest rooms intended or designated to be used for commercial tourist use by providing accommodation to transient guests on a nightly basis or longer." (Hotel Ord., § 41.4, subd. (r).) It defines "Tourist Unit" as "[a] guest room which was not occupied on September 23, 1979, by a permanent resident or is certified as tourist unit [*sic*] pursuant to Sections 41.6, 41.7 or 41.8 below." (Hotel Ord., § 41.4, subd. (s).) The parties stipulated below that the Astoria has six or more rooms designated and certified as tourist units under the Hotel Ordinance. The Clinic acknowledges in its brief that the Astoria had 13 designated tourist units in 1987, when the Chinatown Community Business District was created.

---

[1]Unspecified section references are to the San Francisco Planning Code. References to the "Hotel Ordinance" are to the Residential Hotel Unit Conversion and Demolition Ordinance found in chapter 41 of the San Francisco Administrative Code.

The Planning Code defines a tourist hotel as: "A retail use which provides tourist accommodations including guest rooms or suites, which are intended or designed to be used, rented, or hired out to guests (transient visitors) intending to occupy the room for less than 32 consecutive days. This definition also applies to buildings containing six or more guest rooms designated and certified as tourist units, under Chapter 41 of the San Francisco Administrative Code." (§ 890.46.) Thus, the Planning Code defines tourist hotels both by their intended or designed use and by the designation of tourist units under the Hotel Ordinance. The Clinic argues that section 890.46 does not make designated tourist units a separate basis for classification as a tourist hotel. According to the Clinic, the second sentence of the definition merely explains that the Planning Code regulates tourist use within a residential hotel. This reading ignores the import of the word "also" in the second sentence. It also misses the point that the provision makes buildings meeting its description "tourist hotels," not residential hotels including some tourist rooms.[2]

Section 890.46 of the Planning Code incorporates the Hotel Ordinance definition of a tourist unit as a room certified for tourist use. It is clear the Hotel Ordinance does not contemplate actual use as the only basis for status as a tourist unit, because it defines a tourist unit as *either* a room not occupied by a permanent resident on September 23, 1979, *or* a room certified as a tourist unit. (Hotel Ord., § 41.4, subd. (s).) The Clinic emphasizes the caveat in the Hotel Ordinance that "[d]esignation as a tourist unit under this Chapter shall not supersede any limitations on use pursuant to the Planning Code." (Hotel Ord., § 41.4, subd. (s).) However, the Clinic identifies no Planning Code limitations on the use of tourist rooms that are displaced by the certification of tourist units under the Hotel Ordinance. The Clinic argues that the Planning Code "prohibits all units from being rented for less than 32 days without a conditional use permit." The Clinic cites the designation of tourist hotels as a conditional use in section 810.55, which refers to the definition provided in section 890.46. Section 890.46 includes as tourist hotels those with rooms intended to be rented for less than 32 consecutive days, and also those with more than six certified tourist units. In any case, a permit is not necessarily required for all tourist rentals. If a tourist unit "lawfully existed" in a Chinatown Mixed Use District on the effective date of a new control, tourist use is deemed permitted by the Planning Code. (§ 803.2, subd. (b)(1)(B)(ii).)

---

[2]The Planning Code provides that multiple uses in a structure, other than accessory uses, "will be considered separately as an independent permitted, conditional, temporary or not permitted use." (§ 803.2, subd. (b)(1).) Thus, the Astoria was both a "Tourist Hotel" and a "Residential Hotel." Even one residential unit is sufficient to confer residential hotel status under the Planning Code and the Hotel Ordinance. (§ 890.47; Hotel Ord., § 41.4, subd. (p).)

The Planning Code does not specify that a use must have "actually" existed to be deemed permitted. It states that a use must have "lawfully" existed. Where the rental of hotel rooms is concerned, San Francisco regulations clearly distinguish between actual and lawful use. As noted above, the Planning Code and the Hotel Ordinance define tourist use as a matter of certification, independent of actual or intended use. Moreover, the Hotel Ordinance provides that "[a] tourist unit may be rented to a permanent resident, until voluntary vacation of that unit by the permanent resident or upon eviction for cause, without changing the legal status of that unit as a tourist unit." (Hotel Ord., § 41.19, subd. (a)(1).) Accordingly, even if the Astoria had rented all its designated tourist rooms to permanent residents on April 24, 1987, they would still have "lawfully existed" as tourist units. The Clinic does not claim the Astoria abandoned tourist use. (See § 178, subd. (d) [permitted conditional uses deemed abandoned if discontinued for 3 years].) On this record, we conclude the Astoria lawfully had 13 tourist units before and after April 24, 1987, without the necessity of a conditional use permit.[3]

### DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Corrigan, Acting P. J., and Walker, J., concurred.

A petition for a rehearing was denied September 15, 2000, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 21, 2000. Mosk J., was of the opinion that the petition should be granted.

---

[3]The question whether the Hotel Ordinance permits the Astoria to rent more rooms to tourists during the summer season is not before us on this appeal, and we express no view on it.

In a petition for rehearing, the Clinic insists our holding conflicts with settled law concerning nonconforming uses. It does not. This is not a nonconforming use case. The Planning Code clearly distinguishes between nonconforming uses and permitted conditional uses. (§§ 178, 179, 180.) Significantly, the permitted conditional use provisions do *not* include the nonconforming use provision's declaration that "[s]uch uses . . . are incompatible with the purposes of this Code . . . and it is intended that these uses . . . be brought into compliance with this Code as quickly as the fair interests of the parties permit." (§ 180, subd. (b); see *City and County of San Francisco v. Board of Permit Appeals* (1989) 207 Cal.App.3d 1099, 1106-1107 [255 Cal.Rptr. 307].) Tourist hotels are a permitted conditional use in the Chinatown Mixed Use District. The Astoria did not claim authorization for its tourist rentals under the nonconforming use doctrine, but under a code provision governing permitted conditional uses in the district. (§ 803.2, subd. (b)(1)(B)(ii).) Our holding is based on that provision, and other provisions in the Planning Code and the Hotel Ordinance relating specifically to tourist hotel rooms. Therefore, it does not rest on the same grounds as nonconforming use cases, including the recent decision by Division Five of this court in *San Remo Hotel v. City and County of San Francisco* (2000) 83 Cal.App.4th 239 [100 Cal.Rptr.2d 1]*.

---

*Reporter's Note: Review granted November 21, 2000 (S091757).